EDMUND D. TAYLOR *v.* CHURCHILL COFFING and JOHN H. COFFING.

### ERROR TO LA SALLE.

A. and B. were partners; A. having contributed toward the capital of the firm $10,000 and B. $5,000. A., at different times, withdrew from the firm $18,340, which was charged to him in account upon the books of the firm, and afterward, on the 17th day of May, 1851, to secure the payment of that sum within three years from that date, he gave a mortgage to the firm. Between May 17, 1851, and April 27, 1852, A. paid to the firm, at different times, $2,380.54. In April 27, 1852, A. sold and conveyed to B. all his interest in the property, debts, accounts, notes, books and papers of the firm, and certain private property of A., valued at $5,000; in consideration of which, B. agreed to pay the debts of the firm, and have the $5,000 indorsed upon A.'s mortgage. Afterward, A. made further payments to B., amounting, in all, to $4,383.33. Upon a bill, filed by A., for a settlement of the account: *Held*,

1. That the sale and conveyance did not pass to B. the account against A., but that the same, and the rights of the partners, on account of the capital originally contributed by them, severally, to the firm, were unaffected by such sale and conveyance.

2. Where partners contribute unequal sums toward the capital of the firm, and are to share its losses equally, although the capital may be exhausted in paying debts, or destroyed, the right of contribution exists between the parties to make their losses equal.

3. That the amount secured to be paid by the mortgage bore interest from its date.

4. That in the settlement, interest should be computed on the amount secured to be paid by the mortgage, from its date up to the time of the first payment, when such payment should be deducted, and the interest computed on the balance to the time of the next payment, and so on, to April 27, 1852. That on April 27, 1852, A. should be credited $5,000 upon the books of the firm, and B. should be charged with the same amount. That from the amount due on the mortgage, on April 27, 1852, the $5,000 should be deducted as of that date, and interest computed on the balance up to the time of the next payment, when such payment should be deducted, and interest computed on the balance, as before, up to time of the decree, in the court below. That the sums paid by A. to B., after April 27, 1852, as well as the $5,000, should not only be credited to A., but should be charged to B. upon the books of the firm, and that B. should be charged with interest upon the $5,000, and the sums paid to him after April 27, 1852, up to the date of decree in court below. By this mode of stating the account, it was found that there was due, at the date of the decree in the court below, from A. to the firm, $10,444.15, and from B. to the firm,

Taylor *v.* Coffing et al.

$11,803.85; and after refunding to them the sums by them respectively contributed as capital, left a balance of $7,248, to be divided between the parties as profits. The one-half of which was decreed to be paid A., less what he owed the firm, after deducting his capital therefrom.

THIS was a bill in chancery, filed by Churchill Coffing and John H. Coffing, against Edmund D. Taylor, in the Circuit Court of La Salle county, on the 3d day of April, 1856.

The bill sets forth, that in the month of December, 1847, Edmund D. Taylor, Isaac D. Harmon, and the orator, Churchill Coffing, entered into copartnership, for the purpose of carrying on mercantile and other business at Peru, Illinois. That written articles of copartnership were drawn up, and signed by Taylor, Harmon, and Churchill Coffing, respectively, and therein it was, among other things, stipulated and agreed that Taylor had furnished $5,000, and Churchill Coffing, $10,000, which was the actual amount of capital invested in, and furnished for, the copartnership; that the copartnership should be conducted under the name of Isaac D. Harmon & Co.; that it should commence on the 1st day of January, 1848, and continue for the term of two years, unless dissolved by mutual consent; and that all profits and losses in said business should be divided and shared equally between said parties.

That Taylor, and the orator, Churchill Coffing, did, on or about the 1st day of January, 1848, respectively contribute to the capital of the copartnership the sums of money mentioned in said articles of agreement, and that the same were respectively credited to said parties upon the books of account of said firm.

That Taylor, and the orator, Churchill Coffing, after entering into said copartnership, carried on the business of the same, until the dissolution thereof, as thereinafter mentioned, during which time the said Isaac D. Harmon drew out of said firm divers sums of money, and divers goods, wares and merchandises, for the purpose of erecting a warehouse for the orator, Churchill Coffing, which, together with the sums of money drawn from said firm, in goods and otherwise, by the orator, Churchill Coffing, amounted in the whole to nearly $18,000, and which sum, and the several items composing the same, were charged upon the books of account of the firm to the orator, Churchill Coffing.

That afterward, on the 30th day of September, 1850, the said copartnership was dissolved by consent, and the said Harmon withdrew from the business thereof; that no allowance was made to him for any profits of said firm, and no charges made against him for any losses thereof, and that the business of said firm was thereafter continued by Taylor and Churchill Coffing, without any further written agreement,

until the 7th day of March, 1851, when a written agreement was made, and signed by Taylor and Churchill Coffing, a copy of which will be found in 16 Ill. R. 465. That on the 17th day of may, 1851, the deed and defeasance set forth in 16 Ill. R. 458, 459, were executed.

That Taylor and the orator, Churchill Coffing, carried on the business of said firm of Taylor & Coffing until the 27th day of April, 1852, at which time the firm were possessed of a large amount of goods, chattels and merchandise, had divers interests in real estate, and had large sums of money due to them, which was evidenced by divers accounts, notes, books, and papers; and owed and were liable for divers large debts and liabilities; whereupon the said Taylor and the orator, Churchill Coffing, on the 27th day of April, 1852, made, executed, and entered into the following agreements, under their respective hands and seals, which are set out in 16 Ill. R. 459, 460.

That afterward, on the 28th day of April, 1852, Taylor, in the name of said Taylor & Coffing, caused the said sum of $5,000, mentioned in said agreement, to be indorsed on the deed of conveyance from Churchill Coffing and wife to the firm of Taylor & Coffing, in the words and figures following, to wit:

RECEIVED, Peru, April 28, 1852, of Churchill Coffing, five thousand dollars, in part payment by settlement of Illinois River Bank matters with E. D. Taylor and said Coffing. TAYLOR & COFFING,

By G. L. TAYLOR.

And that Taylor received from Coffing the said banking interests, at the said sum of five thousand dollars, which should be charged to said Taylor in account, as so much by him withdrawn from said firm.

That said firm of Taylor & Coffing, from and after the 17th day of May, 1851, received and took to themselves the rents, issues, and profits of said property, described in said deed of conveyance, which amounted, in the whole, up to the 27th day of April, 1852, to $2,450, and which should have been credited the orator, Churchill Coffing, on account, and would thereby have so far extinguished the said mortgage.

That since April 27, 1852, the said Edmund D. Taylor has received and taken to himself the rents, issues and profits of said property described in the deed, to the firm of Taylor & Coffing, and under and by virtue of the same, amounting in the whole to $4,000; which sum, with a large arrear of interest, ought, in justice and equity, to be accounted for by the said Taylor with the orators.

That, on the 20th day of December, 1852, Churchill Coffing executed and delivered a deed of that date, to John H. Coffing, which is set forth in 16 Ill. R. 462.

That no settlement has ever been had or made between the orator, Churchill Coffing, and said Edmund D. Taylor, relative to the capital by them respectively contributed to the said firm, nor of the sums of money drawn out of said firm by said parties, respectively, but the same remained unsettled and to be adjusted between said parties, and, when so settled and adjusted, the orators charge that the rents and profits of said premises, so taken and received by the firm of Taylor & Coffing and said Edmund D. Taylor, have not only paid all arrearages due upon said mortgage, and leaves a balance, to wit, about $4,000, which ought to be repaid by Taylor to the orators.

The oath of the defendant was waived, and the prayer of the bill is, that an account may be taken of the sums of money and of any property by the said Edmund D. Taylor, and the orator, Churchill Coffing, respectively contributed toward the capital funds or property of said firm; and of the rents, issues and profits of said premises, received by said firm, and by the said Edmund D. Taylor, and of and concerning the sums of money, and of any property, withdrawn from said firm by the said Edmund D. Taylor and the orator, Churchill Coffing, respectively, and to them respectively charged in account; and that said Edmund D. Taylor may be decreed to pay to the orators the sum of money, which may be found due from him, upon such accounting; and that said Taylor may release to the orator, John H. Coffing, all his, the said Taylor's, interest in and to said premises, under, and by virtue of, the deed of conveyance to said firm of Taylor & Coffing, by such sufficient and proper release or conveyance, as to the court should seem meet; and for other and further relief.

The answer admits, that the firm carried on business until April 27, 1852, at which time the firm were possessed of a large amount of goods, chattels, and merchandise, had divers interests in real estate, and had large sums of money due to them, which were evidenced by divers accounts, notes, books, and papers; and that on that day, the instruments of that date, set forth in the bill, were executed. The answer also admits that, in pursuance of said agreement, the indorsement set forth upon the deed of May 17, 1851, of $5,000 was made, as alleged in the bill, and that Taylor received of Coffing the property, assets, and franchises of the bank and plank road company.

The answer also admitted that, from May 17, 1851, the firm of Taylor & Coffing received the rents and profits of the

premises described in the deed of that date, up to April 27, 1852; and that after that time Taylor had received the rents and profits of said premises.

The answer also admitted the conveyance from C. Coffing to John H. Coffing, as set forth in the bill.

The answer denied the liability of Taylor to account, and claimed, if he were so liable, that he should be allowed $13,340, with interest on the same, less the which had been received as rents and profits.

A replication was filed to answer, and proofs were taken. The proofs were relative to the amount received as rents and profits. The court below rendered a decree in favor of the complainants for $3,532.76. Taylor brings the case to this court by writ of error.

The answer of Taylor admitted that C. Coffing, Harmon and Taylor entered into copartnership, as alleged in the bill. That the written articles of copartnership, set forth in the bill, were executed, as therein alleged; that C. Coffing and Taylor, respectively, contributed to the capital of the firm the sums of money mentioned in the articles of agreement, and that the same were respectively credited to the parties upon the books of account of the firm. The answer admits that the business of the firm was carried on as set forth in the bill, but denies that Harmon drew out of the firm money and property for Coffing, and alleges that such money and property were drawn out by Coffing, and used under the superintendence of Theron D. Brewster. The answer also admits that on the 30th day of September, 1850, the copartnership was dissolved by consent, and that Harmon withdrew therefrom, and that no allowance was made to him for any profits of the firm, and no charge made against him for any losses thereof. The answer further admits that the business of the firm was continued by Taylor and Coffing, without any further written agreement, until March 7, 1851, when the written agreement of that date was executed. The answer admits the execution of the deed and defeasance of May 17, 1851, as set forth in the bill, and alleges that prior to that time a settlement took place between Coffing and the firm, on account of the moneys and property drawn out of the firm by him, upon which settlement the balance was found to be $18,340, which is mentioned in the defeasance.

Scates, C. J. In the former case between these parties, 16 Ill. R. 471, et seq., we laid down the principles governing the relation in which these parties stood as partners, and property and effects like these about which they were contracting.

We think, upon reconsideration, that the principles there

laid down and applied to the subject matter of this contract, under the surrounding circumstances, are correct, and are applicable to govern the property and relation here existing. The interpretation given the assignment of the interest of defendant, C. Coffing, in "*all property, debts, accounts, notes, books and papers belonging to the firm of Taylor & Coffing,*" is the legal and true intent and meaning of the parties, as expressed in the writing, and it must govern and control their rights, unless parol evidence is received to alter, change and vary that meaning. But that is inadmissible. Neither the capital put in by Coffing, nor the amount he had withdrawn, which was due from him, in taking the account between the partners, secured by the mortgage, was the property or effects *of the firm* of Taylor & Coffing. Neither of them passed to Taylor under the assignment of 27th of April, 1852. The money, which constituted the capital, became, in fact, as is contended, the property of the firm; and so did the goods purchased with it. The one or the other, remaining on hand, or their proceeds, unless withdrawn by a partner, was, in like manner, the property of the firm. But while this is true, the capital of the partners, for the purposes of the final partnership account, remains a distinct and separate thing from the money or property in which it was paid in. Although all the property of the firm may be destroyed, or may be exhausted in paying debts, yet this does not destroy the capital, or right to have an account taken between the partners for loss of capital, and that loss equalized, by refunding a portion of it, equal in amount to the agreed proposition in which the partners were to share the losses.

An assignment, therefore, of all or a portion of the partnership property, assets and effects, by the firm to a stranger, or by one partner to another, does not destroy the right to have a partnership account taken, to adjust the loss of capital, if the loss of capital is unequal, and the partners were to share equally. Had neither partner withdrawn anything from the firm, and owed nothing to be taken in account between themselves, the effect of this assignment from Coffing to Taylor would have been to settle, as between themselves, all the partnership affairs, except the loss of capital. Taylor, having agreed to share losses equally, would be liable to refund to Coffing $2500, one-half of the excess of his loss of capital above Taylor's capital.

We cannot sanction the idea that, however unequal the amounts advanced by the respective partners may be, that, in case of a loss of the capital, a clause to share the losses equally will not cover this, and apportion it accordingly. The contrary we deem to be the rule. The law does not deem that

every partner shall lose the exact amount put in, in case of a loss of capital; but, on the contrary, however unequal the amounts of capital advanced may be, its loss, or partial loss, is apportioned among the partners, in the degree or proportion in which they may have agreed to share the losses, if any is fixed; otherwise, equally.

Here Coffing had withdrawn from the firm, and applied to his own use the sum of $18,340. On the 17th of May, 1857, he liquidated this account by executing to the firm a mortgage for the amount. After the execution of this mortgage, the firm continued to occupy a store room of mortgagor, worth $500 per annum, during 1851, and $600 per annum during 1852, until 27th of April, 1852, when C. Coffing assigned his interest in effects of firm to Taylor. During the same period, three other tenants of like premises, by direction of mortgagor, paid the rents to the firm. The amount due from firm, for use of store, 1st of April, 1851, to 1st of April, 1852, the end of first quarter, at $500 for former, and $600 for latter year, amounting to $525, together with the rents received from the other three tenants, amounting to $1,855.54, viz.: of Paul, $300; Coates, $800; and Harmon, $755.54, were all proper credits on the mortgage before the assignment of Coffing's interest in firm property. These sums, amounting to $2,380.54, became the property of the firm before that day, and passed, by the assignment to Taylor. The interest accrued—$998.58—added to the mortgage debt amounted to $19,339.28. Deduct rents, and we have a balance due on the mortgage of $16,959.04.

Now, as between the partners, the assignment effected a final adjustment and settlement of all the partnership dealings, affairs, property and effects, except this item in account, of $16,959.04, due in settlement from C. Coffing, and the adjustment of the capital stock paid in.

Had a settlement and division taken place on that day, Coffing might have refunded Taylor's capital of $5000, as he did in effect, by transferring the plank road charter, banking house and bank to Taylor. Deducting his own capital, $10,000, would have left $1,959.04 to divide as profits, one-half of which, $979.52, would be due to Taylor. But this was not done, and the matter stood, to grow more complicated in its statement, and less beneficial to Coffing.

His mortgage debt bore interest, while his capital remained unproductive, thus increasing constantly the amount of his liability on final settlement. But the interest bearing debt is subject to be diminished by the amount paid, on the day of assignment, to Taylor. For this is the legal effect of that transaction: Coffing paid $5000 on his debt in property, and

received credit on his mortgage. The firm sold this same property, on the same day, to Taylor, at that sum. He should have been so charged for it on the firm books, as so much withdrawn. This is, we say, the legal effect of the transaction. Nor do we perceive how it operates to give Coffing credit three times, and charge Taylor as often, as contended by counsel. It is precisely the same thing as if Coffing had paid in $5000 in cash, and received credit on his mortgage, and then the firm had paid over to Taylor, and charged him in account with the same identical money. There is no other legal and fair way, that we can perceive, of passing credits and debits, on paying a debt from a partner to his firm, and then allowing another partner to withdraw it, and appropriate the same money or property to his individual use.

This is the legal effect of this transaction, though not the form of it. The form of effecting it was a direct transfer of the private property of Coffing to Taylor, in private ownership, with an agreement to credit the value on Coffing's debt to the firm. To complete the legal effect, the law will charge Taylor for it, in account, in the partnership books. Coffing was entitled to credit for the full value on his account, as an individual partner, and, at the same time, became entitled to one-half of it, as a *member* of the firm. Taylor, as a member of the firm, owned the other half; and yet, when it is paid over to him, or withdrawn for his individual use, he should be charged in account, on the partnership books, with the full value. This is the only mode of keeping an account current of such transactions. To charge only one-half the value, on the idea that the other half is his, and he ought not to be charged with the half he owns, as is suggested as the only true and just rule, would be a falsification of the books. Upon this mode the assets would be exhausted, and yet the books would only show a disposition of one-half of them. The idea confounds the distinction between the *firm* and the individual *members.*

We have said that the mortgage debt bore interest. We shall proceed, therefore, to state the account upon the mortgage, by adding the interest to it, from time to time, when rents were paid or became due from Taylor & Co., for occupation, and, after deducting such rent, then proceeding, as before, to the next payment. The balance due on the mortgage on 27th of April, 1852, after deducting the payment of $5000, was $11,959. 04. The rents received and due for occupation, up to 20th of December, 1852, amount to $1,300. Deduct rents from debt, with interest, from time to time, of payments, and there is left $11,079.21.

This process is continued in the same mode, making rests,

at each period of payment, for addition of interest, when the payment will more than discharge the interest. We find the rents received and due for occupation, by Taylor & Co., after 20th of December, and up to May 1, 1854, amount to the sum of $3,083.33, which leaves, of the mortgage debt due on that day, the sum of 8,931.73; and this sum, at interest to date of decree, 27th of February, 1857, makes aggregate of $10,444.15. That is the sum to be accounted for by C. Coffing in this decree. On the other hand, there appears to be in Taylor's hands, received since 27th of April, 1852 : The amount paid that day in bank and road charter, etc., $500; amount of rents received and occupation without interest, $4,383.33. Total, $9,383.33.

We are of opinion that plaintiff is equitably chargeable with interest on the several sums received, and on the value of the banking house, charter, etc., from the respective times when received.

The evidence shows that the property and moneys were applied to the individual use of plaintiff, and were kept in active use and employment for his advantage.

Had the money lain dormant and unproductive in his hands, it would present a different aspect of the question.

It was in his power, at any time, to have offered an adjustment of the partnership accounts, or to have filed a bill for that purpose.

Under the circumstances of the case, it appears but just that he should pay interest.

Under no mode of taking the accounts, are we able to arrive at the sum for which defendant obtained a decree.

The true amount due on settlement is three thousand one hundred and seventy-nine dollars and eighty-five cents.

The decree below will be reversed, and a decree will be entered here for that sum, together with the costs in the court below, in favor of John H. Coffing. Plaintiff in error will recover his costs, in this court, of defendants.

The plaintiff in error will be directed to release record of the mortgage in the bill mentioned, according to the decree of the court below.